UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Colleen A. Steen,

    Plaintiff,

v.                                          Civil Action No. 2:10-CV-210

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 7, 13)

    Plaintiff Colleen Steen brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Steen's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm (Doc. 13).

    For the reasons stated below, Steen's motion is denied, and the Commissioner's motion is granted. Pursuant to Local Rule 7(a)(6), and no party having made a request for oral argument, the Court finds that oral argument is not required.

## Background

    Steen was born on June 10, 1946, and thus was forty-three years old on the alleged disability onset date of February 11, 1990. (Administrative Record ("AR") 44, 119, 128.) She attended high school through the twelfth grade, and has special training in property management. (AR 124.) Steen's job history consists of working as a professional actress

from 1985 until 1990, and managing and maintaining several properties from 1977 until 1999. (AR 120, 126.) She also has experience working as a model, and singing and dancing in musical performances. (AR 126.)

On February 11, 1990, Steen was admitted to the Medical Center Hospital of Vermont ("MCHV") for a severe closed head injury after falling off a horse. (AR 220.) She underwent an emergency "right craniotomy and evacuation of a combination subdural, epidural[,] and intracranial hematoma[.]" (*Id.*) Postoperatively, Steen did well, beginning "a vigorous course of rehabilitation which she tolerated quite well." (AR 221.) On discharge, medical records indicate that Steen was "doing quite well considering the magnitude of her injury." (*Id.*) In late February, Steen was admitted to the Rehabilitation Center at MCHV for "intensive functional evaluation and assessment of overall endurance." (AR 232.) Although Steen was noted to have problems with short-term memory, decreased attention span, easy distractibility, and headaches; over the course of her one-week admission, she "continued to improve quickly in overall endurance" and to develop greater insight into the severity of her injury. (*Id.*)

In early March 1990, Steen was discharged to home under twenty-four hour supervision until showing sufficient endurance and judgment to perform home and self-care activities independently. (AR 232.) By mid-March, home services were discontinued, given that, although Steen had occasional headaches and bowel problems when tired, she was "completely independent in activities of daily living and in her homemaking" and was having "no significant cognitive problems." (AR 287.) By November 1990, approximately nine months post-injury, medical records indicate that

2

Steen had "made a very rapid and good recovery" and was "functioning at a high physical as well as cognitive level[.]" (AR 313, 414.) Still, she was not up to the level where she was prior to the injury, and was experiencing "major symptoms of depression." (*Id.*)

On or around April 29, 2008, Steen filed an application for disability insurance benefits, which was denied initially and on reconsideration. (AR 44-52, 58-64, 110-11.) Pursuant to that application, Steen alleges that, starting on February 11, 1990, the date of her horse-riding injury, she became unable to work as a result of her degenerated disc disease, traumatic brain injury ("TBI"), osteoporosis, carpel tunnel syndrome, and cancer. (AR 118.) Steen claims that she is in almost constant pain, and that her TBI has caused her to be disoriented and unable to focus, and to have headaches and dizziness. (*Id.*) She further claims that she is often emotional and finds simple tasks overwhelming. (AR 33-36.)

On April 2, 2010, Administrative Law Judge ("ALJ") Debra Boudreau conducted a hearing on Steen's application. (AR 19-43.) Steen appeared and testified, and was represented by counsel. (*Id.*) Additionally, vocational expert Richard Hall was present at the hearing. (AR 19, 21.) On April 21, 2010, the ALJ issued a decision finding that Steen was not disabled under the Social Security Act from her alleged onset date of February 11, 1990 through her date last insured ("DLI") of September 30, 1994. (AR 7-14.) A few months later, the Decision Review Board affirmed the ALJ's decision, making that decision final. (AR 1-3.) Having exhausted her administrative remedies, Steen filed her Complaint in the instant action on September 7, 2010. (*See* Doc. 1.)

3

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional

4

capacity").

Employing this sequential analysis, ALJ Boudreau first determined that Steen had not engaged in substantial gainful activity since her alleged onset date of February 11, 1990 through her DLI of September 30, 1994. (AR 9.) At step two, the ALJ found that Steen had the medically determinable impairment of "intracranial injury"; but after reviewing the medical records and considering Steen's daily activities during the insured period, the ALJ determined that such impairment was not "severe." (AR 9-14.) The ALJ concluded that Steen had not been under a disability, as defined in the Social Security Act, at any time from February 11, 1990, the alleged onset date, through September 30, 1994, the date last insured. (AR 14.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial

5

evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

### Analysis

I. **Treating Physician Opinions**

Steen argues that the ALJ failed to properly consider "the opinion of the treating physician." (Doc. 7 at 7.) It is unclear whether Steen's argument is based solely on the

opinion of treating physician Dr. Audrey von Lepel, or also includes the opinion of Dr. Hilary Fazzone. (*See id.* at 7-8.) Giving Steen the benefit of the doubt, the Court considers the opinion of both doctors.[1]

### A. Dr. Audrey Von Lepel

Steen began treating with Dr. von Lepel in April 2008 (AR 483), over thirteen years after the DLI of September 30, 1994. In March 2010, Dr. von Lepel opined in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("Physical MSS") that Steen's impairments would cause her to be absent from work for more than four days each month. (AR 522.) Oddly, on the same date, in a Medical Source Statement of Ability to Do Work-Related Activities (Mental) ("Mental MSS"), Dr. von Lepel stated that she "d[id] not know" how often Steen's impairments would cause her to be absent from work, because "[Steen] has not worked." (AR 515.) Although this inconsistency diminishes the weight of Dr. von Lepel's opinion with respect to Steen's ability to work, it is addressed neither in the ALJ's opinion nor in Steen's or the Commissioner's brief. The ALJ did, however, state that she afforded "little weight" to Dr. von Lepel's opinion on the grounds that it "was rendered in April 2009[,]" and the Doctor "was not a treating or examining physician during the relevant time period and has no knowledge of [Steen's] condition prior to the date last insured." (AR 13.)

---

[1] Steen has not articulated her argument on this issue in the manner required by Local Rule 9(a)(6)(D), which provides that a memorandum in support of a motion for order reversing the Commissioner's decision "should present the argument, *reciting pertinent facts*, discussing each issue in a separate subsection, *and including page citations to the record for supporting evidence*." (Emphasis added.)

The existence of a disability can be proven by a retrospective opinion, like Dr. von Lepel's here, but "such an opinion *must refer clearly to the relevant period of disability* and not simply express an opinion as to the claimant's current status." *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (citing *Jones v. Sullivan*, 949 F.2d 57, 59-60 (2d Cir. 1991)) (emphasis added). Dr. von Lepel's MSS forms are written in the present tense, and thus they explicitly assess Steen's functional abilities on the date of their preparation, March 17, 2010, and not during the insured period, over thirteen years earlier. (*See* AR 514-15, 520, 522.) Moreover, the forms themselves reveal that Dr. von Lepel is unable to wager an opinion on the issue of when Steen's limitations were first present. Specifically, in response to a question about the date when Steen's limitations were first present, Dr. von Lepel stated on both the Physical and Mental MSS forms, "I do not know[.]" (AR 514, 522.)

Furthermore, Dr. von Lepel's treatment notes indicate that Steen's condition had worsened over the years, thus supporting the contention that the Doctor's MSS forms do not accurately describe Steen's condition during the insured period. For example, although Dr. von Lepel stated in a March 2009 treatment note that Steen has had symptoms of short-term memory loss, difficulty focusing, headaches, feeling off balance, and generalized back pain "for [years,]" in the same note, the Doctor stated that, "as [Steen] is getting older[,] she is realizing that it is very difficult for her to get through the day." (AR 485.) Dr. von Lepel also noted that, "[t]his is the second time I am seeing [Steen] as a [patient,] and there is quite a difference from when I first saw her in April of last [year]." (*Id.*) In another note, Dr. von Lepel stated that Steen "dealt [with] this for

8

many [years] but as of the last few [years,] probably because of her age and menopause[,] her [symptoms] have worsened." (*Id.*)  Similarly, in an April 2009 treatment note, Dr. von Lepel stated as follows:

> As [Steen] gets older, her back is worsening, her balance is much worse th[a]n it was right after the injury and her memory and ability to concentrate and to do daily activities has become more tasking for her.  I live in the same community that [Steen] lives in and I have seen [her] over the years become less active and have more of a difficult time around town.

(AR 484.)

### B.     Dr. Hilary Fazzone

Like Dr. von Lepel, Dr. Fazzone did not begin treating Steen until well over a decade after the DLI.  (AR 502-03.)  On March 24, 2010, Dr. Fazzone completed Mental and Physical MSS forms opining that Steen's impairments would cause her to be absent from work for about three days each month.  (AR 526, 533.)  The ALJ gave little weight to these opinions because they were "remote from the relevant time period."  (AR 14.)

For the same reasons stated above, the ALJ's decision to afford little weight to Dr. Fazzone's opinion was proper.  Dr. Fazzone, unlike Dr. Von Lepel, did not respond to the question on the MSS forms about the date when Steen's limitations were first present (*see* AR 525, 533), thereby implicitly indicating that she was unable to opine on the issue. Moreover, in the Physical MSS form completed by Dr. Fazzone, in response to a question asking whether Steen's limitations "lasted or will . . . last for 12 consecutive months," the Doctor stated:  "cannot determine exactly.  Will likely last for 12 months."  (AR 533.) This statement implies that, in Dr. Fazzone's opinion, Steen's disabling impairment had not yet lasted for twelve months, which would exclude the possibility of such impairment

9

existing prior to the DLI, over a decade earlier. Furthermore, the records demonstrate that Dr. Fazzone's specialty is in neuro-ophthalmology, and she treated Steen's visual symptoms exclusively, noting that "it is difficult to say" whether Steen's headaches were related to Steen's traumatic injury. (AR 506.)

Even if both Dr. von Lepel and Dr. Fazzone definitively opined that Steen was unable to work during the insured period, the relative weight of these opinions would still be insignificant for two distinct reasons. First, neither of their opinions is based on medically accepted clinical diagnostic techniques. *See Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (holding that a retrospective opinion of a currently treating physician "must be evaluated in terms of whether it is predicated upon a medically accepted clinical diagnostic technique and whether[,] considered in light of the entire record, it establishes the existence of a physical impairment [during the alleged period of disability]") (internal quotation marks omitted). Rather, these doctors' opinions regarding Steen's condition during the insured period are based entirely on Steen's subjective reporting to them. (*See* AR 483, 502, 506, 514, 519.)

Second, where a treating physician's opinion is retrospective, it will not be binding if it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence. *See, e.g., Saviano v. Chater*, 956 F. Supp. 1061, 1069 (E.D.N.Y. 1997). In this case, the record contains significant medical evidence contradicting Dr. von Lepel's and Dr. Fazzone's opinions with respect to Steen's ability to work during the insured period, and the ALJ acknowledged and thoroughly discussed this evidence. (*See* AR 12-13.) Specifically, the treatment notes of several other medical providers,

10

including providers such as Drs. Joseph McSherry, Cordell Gross, Maureen Delaney, and Raymond Milhous, who cared for Steen within months after she sustained her brain injury, indicate that Steen was recovering nicely and functioning at high physical and cognitive levels during the insured period, and was, as Dr. Milhous stated, "completely independent in activities of daily living and in her homemaking[.]" (AR 287; *see also* AR 199, 221, 251, 313.)

## II.     Credibility Analysis

The ALJ found that Steen's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not credible to the extent they are inconsistent with [the] finding that [Steen] has no severe impairment or combination of impairments[.]" (AR 11.) Steen contends that this finding is not supported by substantial evidence, and that the ALJ should have specifically stated the reasons supporting the finding.[2] The Court finds that this argument fails, as the ALJ clearly articulated the reasoning for her credibility determination, and substantial evidence supports that determination.

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an

---

[2] Steen does not recite pertinent facts and include page citations to the record in support of this argument as required by Local Rule 9(a)(6)(D).

individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996).

     In this case, the ALJ clearly stated her reasons for questioning Steen's credibility. Specifically, the ALJ stated that "[t]he objective medical evidence does not support a finding that [Steen's] medically determinable impairment caused more than a minimal effect on [Steen's] ability to perform basic activities for a continuous period of 12 months." (AR 11.) In fact, and as noted by the ALJ and above, the contemporaneous medical evidence from multiple medical providers document that Steen experienced a "very rapid and good recovery" from her head injury. (AR 313; *see also* AR 221, 232, 248-51, 287.) As also noted by the ALJ, the record documents that Steen was able to engage in other activities, such as dancing, playing tennis competitively three days each week, playing volleyball two days each week, and driving (*see, e.g.*, AR 199, 283, 287, 298, 316), which tend to call into question the credibility of Steen's statements regarding the severity of her impairments during the insured period. The ALJ correctly stated: "[Steen's] ability to resume physical activities, dancing by July [of 1990] and playing tennis by October [of 1990], suggests that any physical limitations were not continuously present for the required twelve month period." (AR 12.) Pursuant to SSR 96-7p, cited in Steen's motion, it was proper for the ALJ to consider Steen's "daily activities" during the relevant time period in assessing Steen's credibility. SSR 96-7p, 1996 WL 374186, at *3 (Jul. 2, 1996); *see also Wilson v. Astrue*, No. 09-CV-732S, 2010 WL 2854447, at *7-8 (W.D.N.Y. Jul. 19, 2010) (in assessing claimant's credibility, ALJ properly considered

that claimant underwent pool therapy, participated in vocational rehabilitation training in order to become a gunsmith, and engaged in "normal activities of daily living and personal care," including taking his daughter to school and completing "some cleaning," consisting of dusting, limited vacuuming, and laundry).

### III.     Onset Date Determination

Finally, citing to SSR 83-20, Steen claims that the ALJ should have inferred an onset date with respect to Steen's disability because "it [is] very clear that she was disabled at the time Dr. Frazzone and Dr. [v]on L[e]pel examined her in 2008, 2009." (Doc. 7 at 10.)  This argument fails, as SSR 83-20, 1983 WL 31249 (1983) ("the Ruling") does not apply in this case.

Preliminarily, SSR 83-20 plainly states that, in cases like this, where the alleged disability is traumatic in origin, "onset is the day of the injury if the individual . . . is expected to be unable to engage in substantial gainful activity . . . for a continuous period of at least 12 months . . . ." *Id.* at *2.  Therefore, the Ruling does not require an ALJ to "infer" an onset date in traumatic-injury cases like this; the onset date is simply the date of the injury, in this case February 11, 1990.

More importantly, SSR 83-20's onset date requirement does not apply here because the Commissioner did not find Steen to have been disabled at any time.  The Ruling states as follows:

> *In addition to determining that an individual is disabled*, the decision[-]maker must also establish the onset date of disability.  In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

13

SSR 83-20 at *1 (emphasis added). The premise behind this statement is that an ALJ must have already found the claimant to have been disabled. Conversely, it is well-established that, in cases where the ALJ does not find the claimant to have been disabled at any point in time, the procedures proscribed in SSR 83-20 are inapplicable. *See, e.g., Baladi v. Barnhart*, 33 Fed. App'x 562, 564 (2d Cir. 2002) ("SSR 83-20 is inapplicable [here] because the ALJ's determination that plaintiff was not disabled obviated the duty under SSR 83-20 to determine an onset date."); *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) ("Because the ALJ found that Sam was not disabled '*at any time* through the date of [the] decision' . . ., the question of *when* he became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply.") (emphasis in original); *Nix v. Barnhart*, 160 Fed. App'x 393, 396-97 (5th Cir. 2005) (absent an ALJ's finding of disability, there is no need to infer an onset date under SSR 83-20); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) ("SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time."); *McCracken v. Comm'r of Soc. Sec.*, No. 1:08-CV-327, 2009 WL 2983049, at *4 (S.D. Ohio Sep. 14, 2009) (where "there was never a finding that Plaintiff became disabled at any time, ... SSR 83-20 does not apply to determine whether the claimant became disabled prior to the expiration of his insured status").

As pointed out by the Commissioner, Steen cites no authority standing for the proposition that an ALJ must infer an onset date of disability in a case like this, where

14

there is no finding of disability.  Therefore, the requirements of SSR 83-20 do not apply, and Steen's onset date argument fails.

## Conclusion

As discussed above, ALJ Debra Boudreau conducted a correct analysis of Steen's claim in a comprehensive fashion.  She cited substantial evidence to support her findings, and discussed the opinion of nearly every medical provider, whether treating or consulting, regardless of whether such provider treated or examined Steen during the insured period or many years later.  This is a case where the ALJ's decision has been arrived at by employing the correct legal standards and is plainly supported by substantial evidence.

For these reasons, Steen's motion (Doc. 7) is DENIED, and the Commissioner's motion (Doc. 13) is GRANTED.  Accordingly, the decision of the Commissioner is hereby AFFIRMED.

Dated at Burlington, in the District of Vermont, this 10th day of June, 2011.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge